■ MIA HENDERSON-JONES, Individually and as Parent and Natural Guardian of ENAIJAH JONES, an Infant, Appellant, v CITY OF NEW YORK et al., Respondents, et al., Defendants. CYRUS R. VANCE, JR., District Attorney, New York County, Nonparty Respondent. [928 NYS2d 536]—

Plaintiff alleges that on October 27, 2005, 10 police officers entered her home without a search warrant, arrested her and took her to the precinct, where she was subjected to a strip search. She was then transferred to the Manhattan Detention Complex, where she was strip-searched again and held for 30 hours. On October 28, 2005, the Manhattan District Attorney's Office decided not to prosecute plaintiff.

Plaintiff was able to partially identify only two of the officers involved in her arrest. One was the arresting officer, whose last name she remembered as Sierra and whose shield number she noticed and remembered. The other was a female officer, whose name she did not identify but whose shield number she noticed and remembered.

Plaintiff timely served a notice of claim, and sought to ascertain the identity of all of the officers involved in the search and arrest by requesting information from the New York City Police Department and the District Attorney's Office pursuant to the Freedom of Information Law. However, she received no information in response. On October 13, 2006, she commenced this action. The case caption named Sierra by his last name and shield number and the female officer by shield number only. The seven other defendants were named as "those individuals who accompanied Detective Sierra into plaintiffs' apartment and participated in the illegal acts hereinafter alleged."

Shortly after commencing the action, plaintiff served her first notice for discovery and inspection, which sought, inter alia, the identity of all police officers involved in her arrest and detention. Plaintiff also provided defendants with an authorization,

so-ordered by the court on January 31, 2007, for disclosure of all records "relating to the investigation leading up to [her] arrest, . . . including the names and addresses of the involved detectives and police officers." At the same time, the court granted plaintiff an extension of the time provided by CPLR 306-b to identify and serve the unidentified defendants. On April 6, 2007, the court granted plaintiff's motion pursuant to CPLR 308 (4) for leave to effectuate service of process upon the unknown police officers by serving the Police Commissioner and Corporation Counsel.

Also in April 2007, a preliminary conference was conducted that resulted in an order directing defendants to disclose, inter alia, the criminal complaint, the follow-up report, the arrest report, memo book entries for the incident in question, the on-line booking sheet, and a patrol guide. In response to the discovery notice and the preliminary conference order, defendants provided only the name of the female officer, Sergeant Wendy Gomez-Smith, a one page arrest report, and an illegible copy of the court detention pen record for the Manhattan Detention Complex.

In August 2007, plaintiff moved for default judgments against the unknown officers, Detective Sierra and Sergeant Gomez-Smith, and for an order striking defendants' answer for failure to provide discovery. On October 19, 2007, preceding oral argument on the motion, plaintiff served a second notice for discovery and inspection seeking the names of all officers assigned to the Manhattan Gang Squad on October 27, 2005, and copies of their memo book entries of October 27-29, 2005. On the return date of the motion, defendants provided three affidavits related to the motion to compel. One was by Sierra, now retired, who stated that all of plaintiff's arrest and detention documents had been kept by him in a folder, which he had left in his old desk. Another affidavit was by Gomez-Smith, who attested that she was currently assigned to the Manhattan North Investigations Unit. She stated that she went to her old Gang Squad office, searched "old desks, lockers, and the drawers where each of us kept our arrest paperwork," but could not locate Sierra's folder on plaintiff or her own memo book for that time period.

The court granted plaintiff's motion for a default judgment against the unknown police officers, but denied the motion as to Detective Sierra, and compelled plaintiff to accept his answer nunc pro tunc. (Plaintiff agreed to accept the answer of Gomez-Smith.) The court noted that persons identified later could be substituted by any party, and that those substituted persons

could move to vacate the default. As to the discovery issues, the court expressed skepticism that the documents that defendants had produced represented a complete response to plaintiff's request, but suggested that plaintiff depose Sierra and revisit the discovery dispute at a later date, if necessary.

The deposition of Sierra was scheduled for December 11, 2007, but he failed to appear. He also failed to appear at the deposition rescheduled for two weeks later. When Sierra finally appeared on January 9, 2008, he identified Sergeant John Van Orden as the supervisor of the search at plaintiff's home.

On March 5, 2008, defendants served a response to the October 19, 2007 preliminary conference order. They objected to providing the names of the officers assigned to the Gang Squad and their memo books, on the grounds that the demand was overbroad, protected by law enforcement privilege, and irrelevant, since there was no showing that all the officers assigned to the Manhattan Gang Squad were involved in plaintiff's arrest and detention.

Also on March 5, 2008, a compliance conference was held, at which the court directed defendants to "identify the name, rank, & badge numbers of all NYPD personnel who responded to and otherwise participated in the arrest of Mia Henderson-Jones and Englebert Jones . . . If said person is not disclosed to plaintiff's counsel within 25 days of entry of this order, the defendants shall be precluded from calling that individual at trial." The court directed the production of Sierra for his continued deposition, and ordered that Gomez-Smith and Sergeant Van Orden be deposed as well.

Neither Van Orden, at his deposition, nor Sierra, at his continued deposition, could recall the identity of any other officers present that evening. They also gave conflicting reports of who found the marijuana, where the officer was when he observed it, and whether the marijuana was in the living room or a bedroom. Van Orden did not have specific recall of most of the events concerning the search warrant and its execution, but testified that he had a memo book for that evening at work and would make it available.

On August 11, 2008, plaintiff served a third notice for discovery and inspection, making specific reference to Van Orden's testimony, seeking, inter alia, any paperwork concerning her arrest and roll call and sign in sheets for the Gang Squad.

At a January 23, 2009 compliance conference, a so-ordered stipulation was executed stating that "[plaintiff] will move or subpoena for deposition of New York County DA's office, Patri-

cia Bailey, Chief of Special Litigation Bureau, regarding basis for decision not to prosecute plaintiff." The stipulation also stated that plaintiff would move to enforce compliance with her notices for discovery and inspection and to substitute Van Orden for one of the unidentified defendants.

In May 2009, defendants still not having disclosed the names of all of the officers, plaintiff moved, pursuant to CPLR 3126 (3), for an order striking their answer for willfully and contumaciously failing to comply with prior orders and notices. Plaintiff also moved, pursuant to CPLR 1021 and 1024, to substitute Van Orden as a party in lieu of unknown officer No. 3, and for an order compelling Assistant District Attorney Patricia Bailey to appear for a deposition and produce records. Finally, the motion sought to compel the District Attorney's office to produce Bailey for a deposition. Defendants disputed that they had acted willfully and contumaciously, contending that they had diligently attempted to provide documentation regarding plaintiff's arrest and brief detention. As for the substitution request, defendants maintained that Van Orden had never been served, and thus the court lacked jurisdiction over him. They further argued that the fact that plaintiff waited a year and a half before moving to substitute should bar the substitution. The District Attorney's Office also opposed the motion, on the grounds that plaintiff had failed to show special circumstances warranting disclosure from a nonparty, that, in any event, the District Attorney's Office had not been able to locate a document explaining why it declined to prosecute, and that even if it could find such a document, there was a substantial probability that the document would be privileged.

The court declined to impose a sanction. It found that the sanction of striking a pleading was unwarranted, since plaintiff had not shown that defendants had acted willfully. To the contrary, the court found that they had "substantially complied" with their discovery obligations, and that their responses concerning the precinct command log, and Sierra's folder, were sufficient. The court struck plaintiff's request for copies of all memo book entries for the date in question for all on-duty officers as overbroad, irrelevant and privileged.

The court, however, found the affidavit by Sergeant Gomez-Smith concerning her search for Sierra's folder and memo books inadequate, since it did not mention a specific search for the DD-5's. Finally, finding their objections inadequate, the court directed defendants to provide the names, ranks and badge numbers of the officers that participated in the arrest and detention, "or provide an affidavit by a person with knowledge as to

the nature and scope of the search which failed to uncover any responsive documents" within 30 days of the order.

As to plaintiff's motion to substitute Van Orden, the court found that jurisdiction was never obtained over Van Orden, because the service upon an unnamed officer at One Police Plaza was insufficient to give Van Orden notice. Moreover, the court found that more than a year had elapsed since plaintiff learned Van Orden's name on January 9, 2008, and that Van Orden had been prejudiced by plaintiff's delay in substituting his name, particularly since a default judgment had been entered against him on November 11, 2007. Finally, the court denied any relief against the District Attorney's Office, stating that plaintiff was required to serve a subpoena before she was entitled to information from a nonparty.

In response to the court's order, defendants provided plaintiff with five separate affidavits, two of which are relevant on this appeal. One was by Lieutenant Sean Frey of the Manhattan Gang Squad, who indicated that he searched "in and around retired Detective Sierra's former desk, as well as in file cabinets," but could not locate any DD-5's (complaint follow-ups), chain of custody reports, TAC plans or any other documentation of plaintiff's arrest. Van Orden averred in his own affidavit that he searched all of his former desks and lockers but could not find his activity log (or memo book), although he had testified earlier to having kept it.

In February 2010, plaintiff moved again to strike defendants' answer for failure to provide the discovery required in the first discovery order, as well as the long-outstanding demand for the names of the police officers present when plaintiff was arrested. Plaintiff argued that the affidavits that defendants had provided either were identical to affidavits submitted earlier in connection with the case, which were deemed insufficient under the prior order, or failed to demonstrate that a meaningful and genuine search had been made. Plaintiff also submitted an affidavit, and supplemental affidavit, by a former police officer who had experience with the NYPD's Civilian Complaint Bureau. The former officer opined that many of the documents sought, such as the DD-5, the online booking worksheet, and the arrest supplemental reports, were kept in secondary locations, and thus the lost Sierra folder was not dispositive as to whether defendants could find the records. The expert further opined that a search should be made of records kept by the Support Service Bureau at One Police Plaza, where closed case and arrest files could be accessed. He was of the overall opinion that the searches conducted by defendants were extremely limited and

that their averments that they knew of "no other places" where the documents would be "lack[ed] integrity."

In opposition, defendants argued that they had been complying with all discovery orders and that many of the documents sought by plaintiff had been lost, were unavailable, or did not exist. As to plaintiff's expert's opinion that they had not conducted a good faith search, defendants argued that "the City is not required to search in every location that Plaintiff's 'expert' *speculates* documents could be . . . Lt. Frey searched in the only places he knows where the case/arrest file would be kept."

By order entered on June 1, 2010, the court stated, "Upon the foregoing papers, it is ordered that this motion to strike defendant's answer is denied."

"[I]t is well settled that the drastic remedy of striking a party's pleading pursuant to CPLR 3126 for failure to comply with a discovery order . . . is appropriate only where the moving party conclusively demonstrates that the non-disclosure was willful, contumacious or due to bad faith" (*McGilvery v New York City Tr. Auth.*, 213 AD2d 322, 324 [1995]). Willful and contumacious behavior can be inferred by a failure to comply with court orders, in the absence of adequate excuses (*see Johnson v City of New York*, 188 AD2d 302 [1992]; *Nunez v City of New York*, 37 AD3d 434 [2007]). A party that permits discovery to "trickl[e] in . . . [with a] cavalier attitude . . . should not escape adverse consequence" (*Figdor v City of New York*, 33 AD3d 560, 561 [2006]).

As drastic as the penalty of striking an answer is, it serves the important function of deterring obstreperous litigation behavior. Indeed, the Court of Appeals recently made the following observation: "As this Court has repeatedly emphasized, our court system is dependent on all parties engaged in litigation abiding by the rules of proper practice. The failure to comply with deadlines not only impairs the efficient functioning of the courts and the adjudication of claims, but it places jurists unnecessarily in the position of having to order enforcement remedies to respond to the delinquent conduct of members of the bar, often to the detriment of the litigants they represent. Chronic noncompliance with deadlines breeds disrespect for the dictates of the Civil Practice Law and Rules and a culture in which cases can linger for years without resolution. Furthermore, those lawyers who engage their best efforts to comply with practice rules are also effectively penalized because they must somehow explain to their clients why they cannot secure timely responses from recalcitrant adversaries, which leads to

the erosion of their attorney-client relationships as well. For these reasons, it is important to adhere to the position we declared a decade ago that if the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity" (*Gibbs v St. Barnabas Hosp.*, 16 NY3d 74, 81 [2010] [internal quotation marks, brackets, and citations omitted]).

Defendants' behavior in this matter clearly implicates the values articulated in *Gibbs*. Plaintiff was required to serve three discovery notices on defendants to determine the identities of the officers who executed the warrant, and to this day defendants have not complied. The information sought is simple and straightforward, and, most importantly, easily discoverable. The discovery demands were made in addition to a FOIL request and the furnishing of an authorization designed to lessen defendants' burden in searching for the appropriate names. Moreover, defendants were ordered by the court, on no fewer than three occasions, to produce documents containing the officers' names or to reveal the names outright. To the extent defendants made any effort to divulge the names of the officers who executed the search warrant, they made the effort only because plaintiff pressed the issue. It is not unreasonable to deduce from this record that had plaintiff not sought enforcement of unequivocal court orders requiring the production of the officers' names, defendants, to this day, would not have provided even the scant information that they eventually provided. Moreover, defendants failed to demonstrate that they even attempted to comply with their discovery obligations. An affidavit regarding the unavailability of documents that are the subject of a discovery order must document a thorough search conducted in good faith. It should include details such as "where the subject records were likely to be kept, what efforts, if any, were made to preserve them, whether such records were routinely destroyed, [and] whether a search [was] conducted in every location where the records were likely to be found" (*Jackson v City of New York*, 185 AD2d 768, 770 [1992]).

Here, the affidavits submitted by defendants reveal that the efforts that defendants maintain they took to ascertain the names of the officers were so unimaginative and lacking in diligence that it is hard to characterize them as anything other than willfully designed to thwart plaintiff. Searching old desks and lockers is woefully insufficient. As demonstrated by the unchallenged affidavit by plaintiff's expert, the Police Department is a sophisticated bureaucracy with a system for collecting and storing information concerning arrests and prisoner

processing that is not limited to the furniture and notebooks assigned to the officers involved. Indeed, defendants did not even attempt to explain why it would have been futile to search the areas and databases suggested by plaintiff's expert. They addressed the expert's opinion only to the extent of impugning his qualifications.

Defendants' argument that plaintiff's request for the documents containing the names of all 50 of the Gang Squad officers was overbroad reveals a disdain for the numerous court orders issued in this case. From the early stages of the litigation, defendants were directed, in absolute terms, to disclose the names of the officers involved in the execution of the warrant on plaintiff's apartment. Thus, the format of plaintiff's initial requests for the information is irrelevant. Defendants could have appealed from the orders, but they did not. That they continue to argue, even now, that plaintiff asked for the documents in an imprecise manner confirms their outright disdain for the court's authority to supervise discovery.

As to the substitution of Sergeant Van Orden, plaintiff demonstrated that she made a diligent inquiry to identify the names of the officers involved before commencing this action (*see* CPLR 1024; *Goldberg v Boatmax://, Inc.*, 41 AD3d 255 [2007]). She served the unidentified officers by an alternative means of service authorized by the court pursuant to CPLR 308 (5) (*see Harkness v Doe*, 261 AD2d 846 [1999]). Thus, she should have been permitted to substitute Van Orden as a defendant. We reject defendants' position that plaintiff waited too long to move to substitute Van Orden; the substitution was "deemed" effective when plaintiff learned of Van Orden's identity (CPLR 1024; *see Woodburn Ct. Assoc. I v Wingate Mgt. Co.*, 243 AD2d 1043, 1045 [1997]).

Finally, plaintiff's appeal from the denial of her motion to compel discovery from the Manhattan District Attorney's Office has been rendered academic by our striking of defendants' answer. Concur—Mazzarelli, J.P., Sweeney, DeGrasse, Richter and Manzanet-Daniels, JJ.