Henry Haynes, Respondent-Appellant, v City of New York et al., Respondents, and Anthony Casilla, Appellant-Respondent. [45 NYS3d 387]—

Judgment, Supreme Court, Bronx County (Alexander W. Hunter, Jr., J.), entered January 16, 2015, in favor of plaintiff as against defendant Detective Anthony Casilla, and, after a jury trial, in favor of defendants the City of New York and

Detective Joseph Human as against plaintiff, and bringing up for review, an order, same court, Justice and entry date, which, having granted plaintiff's motion in limine to strike Casilla's answer, severed the action against Casilla for inquest, and granted plaintiff's application to enter judgment in favor of the remaining defendants, dismissing his complaint against them, modified, on the law, the facts and in the exercise of discretion, to dismiss the complaint as against defendant Casilla, and the judgment otherwise affirmed, without costs. The Clerk is directed to enter an amended judgment dismissing the complaint against all defendants. Appeal from aforementioned order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

After plaintiff's wife was arrested, the police agreed to bring her dogs to her apartment. Detectives Human and Casilla encountered plaintiff in the building's lobby, but would not allow him to go into the apartment because he had no keys or identification.

After hearing the front door slam, plaintiff, assuming that the officers had left, tried to enter the apartment by traversing a four-to six-inch wide ledge and climbing in through the bathroom window. Plaintiff claims that, as he was trying to enter the window, Casilla pushed him with both hands, causing him to fall 20 feet to the ground. According to Casilla and Human, after placing the dogs in the apartment, they closed and locked the door without looking into or entering the apartment. Upon exiting the building, they found plaintiff on the ground, contacted EMS and filled out an aided worksheet.

On August 7, 2008, Supreme Court (Larry S. Schachner, J.), issued an order granting plaintiff's motion to strike defendants' answer to the extent that "defendants have till 30 days before trial to produce Officer Casilla's outstanding memo book. If the discovery is produced prior to that time [plaintiff] is entitled to an automatic second deposition of Officer Casilla in regards to same. Should it be produced after the 30 day point before trial, [defendant] is precluded from offering same into evidence at the trial of this action" (the 2008 order).

On May 6, 2014, the day before he was scheduled to testify, Casilla found his memo book in a locked cabinet at his precinct. Casilla notified his counsel, who notified counsel for plaintiff, of his discovery. The following day, plaintiff's counsel moved in limine to strike Casilla's answer, arguing, inter alia, that his opening statement and much of his prepared cross-examination of Casilla revolved around the missing memo book. When asked by the court how the book could have suddenly turned up

midtrial, defense counsel stated that the precinct was undergoing equipment movement and Casilla walked by a locked cabinet he had never seen before that had his name on it. Casilla had the cabinet unlocked and the memo book was right there.

The trial court granted plaintiff's motion to strike Casilla's answer. While initially stating that it did not see any "fraud or unclean hands" on Casilla's part, the court, referencing the above noted 2008 order, held that it "cannot disregard an order of a judge of coordinate jurisdiction right along this issue."

Without informing the jury that Casilla's answer had been stricken, the trial proceeded with Casilla as a witness. Plaintiff chose to affirmatively admit Casilla's memo book into evidence and cross-examined him about its recent discovery, contents and authenticity. The relevant entries in the book stated: "1335 A/A RE: Drop off dogs apt 1D. 1336 10-54 aided male fell from window while attempting to enter apt from ledge witness [identifying information redacted] 1356- 97H to Lincoln Hosp EMT 48 Pct."

The jury found that Casilla did not push plaintiff as he attempted to enter his apartment through a window. Pursuant to the trial court's instructions, the jury continued to the questions on the verdict sheet related to damages and made no awards for past or future medical expenses or pain and suffering, writing "none" in response to each question. The jury also found that plaintiff should not be awarded any punitive damages against Casilla.

The trial court improvidently exercised its discretion when it granted plaintiff's motion in limine seeking to strike Casilla's answer pursuant to the 2008 order, without a finding that Casilla's conduct was willful, contumacious or due to bad faith (*see Bassett v Bando Sangsa Co.*, 103 AD2d 728 [1st Dept 1984]; *see also John Hancock Life Ins. Co. of N.Y. v Triangulo Real Estate Corp.*, 102 AD3d 656 [2d Dept 2013]). The 2008 order contemplated a remedy of preclusion, and on the record before us there is insufficient evidence of willful or contumacious conduct on Casilla's part, or prejudice to plaintiff, to warrant the drastic remedy of striking of Casilla's answer in the midst of the jury trial based on his belated production of the memo book (*see Fox v Grand Slam Banquet Hall*, 142 AD3d 473 [1st Dept 2016]; *Colome v Grand Concourse 2075*, 302 AD2d 251 [1st Dept 2003]), whose contents were exculpatory in nature (*see Ahroni v City of New York*, 175 AD2d 789 [2d Dept 1991]).

Under the unique circumstances of this case, where the jury found that Casilla did not push plaintiff out the window and

that plaintiff is not entitled to any damages, judgment should be entered in Casilla's favor dismissing the complaint. It was plaintiff's attorneys who charted the course of the trial, suggesting that it proceed with Casilla as a witness, without informing the jury that his answer had been stricken, and that Casilla's alleged conduct be included in the verdict sheet as a liability issue. Plaintiff's attorneys also suggested that the court "direct the jury that they must also award—decide a damages award no matter what they find as to liability." Plaintiff's counsel further argued to the court that "[w]hen an answer is stricken and the testimony abides the event, [defense counsel is] not prejudiced at all. This case is going forward exactly the same way. He can argue to the jury that Detective Casilla is not responsible for what happened. It's only his legal status that has changed. The defense of this case is no different. If your Honor is wrong, ultimately, on whether the answer should be stricken, we've got a full record with a jury verdict. Everything is the same. The Appellate Division will either say you were right in striking the answer or you weren't, but the trial will be conducted and the outcome will be the same."

As to plaintiff's cross appeal, neither the testimony of defendants' expert toxicologist, nor the trial court's refusal to give a missing document charge regarding the original aided card, warrants retrial.

"Preclusion of expert evidence on the ground of failure to give timely disclosure, as called for in CPLR 3101 (d) (1) (i), is generally unwarranted without a showing that the noncompliance was willful or prejudicial to the party seeking preclusion" (*Martin v Triborough Bridge & Tunnel Auth.*, 73 AD3d 481, 482 [1st Dept 2010], *lv denied* 15 NY3d 713 [2010]). Prejudice can be shown where the expert is testifying as to new theories, or where the opposing side has no time to prepare a rebuttal (*see Krimkevitch v Imperiale*, 104 AD3d 649 [2d Dept 2013]).

Defendants' answer raised a culpable conduct defense and plaintiff was or should have been aware that his consumption of alcohol was at issue. Indeed, his medical records showed his blood alcohol level to be in excess of .15% and referenced his inebriated appearance, and plaintiff was questioned about his sobriety at his deposition. Moreover, plaintiff was able to serve his own expert notice, attacking the credibility of the blood alcohol reading. Given these circumstances, plaintiff has not shown why 34 days was not enough time to prepare for the cross examination of defendant's expert or that the belated disclosure was otherwise prejudicial (*see Ostrow v New London Pharm.*, 278 AD2d 158, 159 [1st Dept 2000]). In any event, the

videotaped testimony of the defense expert was stopped before it finished and was stricken, with the jury advised to disregard it. The jury is presumed to have followed the court's instructions (*see Brown v Speaker*, 66 AD3d 422 [1st Dept 2009]).

Given that a copy of the aided card was available, the loss of the original did not warrant a missing document charge (*see Think Pink, Inc. v Rim, Inc.*, 19 AD3d 331 [1st Dept 2005]). The police department entered data from the card into a computer file and printout, admitted at trial. Plaintiff was able to elicit substantial testimony regarding the production of a copy and not the original, which counsel used to further plaintiff's coverup theory. Concur—Friedman, Andrias, Webber and Gesmer, JJ.

Mazzarelli, J.P., concurs in a separate memorandum as follows: I agree with the majority that it was error for the court to strike defendant Casilla's answer without first finding that his conduct was willful, contumacious or in bad faith. However, I disagree with the majority's statement that the record contains "insufficient evidence of willful or contumacious conduct on Casilla's part." "Willful and contumacious behavior can be inferred by a failure to comply with court orders, in the absence of adequate excuses" (*Henderson-Jones v City of New York*, 87 AD3d 498, 504 [1st Dept 2011]). Here, Casilla not only lacked an adequate excuse for not producing the memo book he carried on the day of the incident, despite having been ordered to do so on no less than four occasions over the span of six years, he made a veritable mockery of the proceedings by purporting to have "discovered" it on the literal eve of his own testimony. It simply defies credibility that a file cabinet with Casilla's own name on it appeared in a hallway in the precinct house at just the right time for Casilla to avoid the consequences of having lost it. Further, it throws grave doubt on Casilla's prior averment, in an affidavit responding to plaintiff's initial motion to strike defendants' answer, that he "conducted several searches" for the notebook in question.

Nevertheless, without actually determining that Casilla acted willfully, the court prematurely struck his answer. Further, the fact that the memo book turned out not to inculpate Casilla suggests that striking of the answer would ultimately have been too harsh a sanction. In addition, to order a new trial now, with a lesser sanction, such as an adverse inference in favor of plaintiff, would be to ignore the fact that, in voluntarily calling Casilla as a witness and submitting him to hostile questioning about the circumstances surrounding the sudden appearance of the memo book, plaintiff effectively

selected his own remedy. It would not be appropriate for this Court to reverse course and remand the matter under these circumstances.

Incidentally, it was also plaintiff who requested a verdict sheet that instructed the jury to calculate plaintiff's damages even if it found, as it did, that Casilla did not push plaintiff out the window. It was error for the court to grant this request, as it could possibly have sowed great confusion among the jurors. Nevertheless, this error was harmless as the jury was able to deduce that plaintiff was entitled to no damages upon its conclusion that defendants had no liability.