**Thomas v Metropolitan Transp. Auth.**

2024 NY Slip Op 33499(U)

October 3, 2024

Supreme Court, New York County

Docket Number: Index No. 158874/2019

Judge: Richard Tsai

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     **HON. RICHARD TSAI**                          PART                          21
                                                    *Justice*

------------------------------------------------------------------------X

JOCELYNE THOMAS,

                          Plaintiff,

                          - v -

METROPOLITAN TRANSPORTATION AUTHORITY, NEW
YORK CITY TRANSIT AUTHORITY, THE CITY OF NEW
YORK, JUDLAU CONTRACTING, INC., OHL USA, INC.,
HILTON RESORTS CORPORATION, CONSOLIDATED
EDISON COMPANY OF NEW YORK, INC. and TRIUMPH
CONSTRUCTION CORP.,

                          Defendants.

------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 158874/2019 |
| MOTION DATE | 01/11/2024 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 001) 107-124

were read on this motion to/for                          DISCOVERY                          .

In this action, plaintiff alleges that, on January 7, 2019, she tripped and fell "on construction debris and/or equipment" while walking on the sidewalk along 6th Avenue "approximately 30 feet from the north west corner of West 57th Street" (exhibit D in support of motion [NYSCEF Doc. No. 113], amended complaint ¶ 58).

On this motion, defendant Hilton Resorts Corporation (Hilton) seeks discovery sanctions and/or to compel defendant Consolidated Edison Company of New York, Inc. (ConEd) to provide a "proper witness" with "sufficient knowledge" for deposition (affirmation in support of motion [NYSCEF Doc. No. 109] ¶¶ 42, 47).  Plaintiff Jocelyne Thomas has filed an affirmation in support of the motion (NYSCEF Doc. No. 117). ConEd opposes the motion.[1]

The issue here is whether the witness Brian Wissert, who appeared for ConEd's deposition on September 26, 2023, was "not sufficiently knowledgeable about defendant [ConEd]'s business" such that movant would be "entitled to further examination of that defendant by a knowledgeable witness" (*Lopez v Bronx Ford, Inc.*, 209 AD3d 612, 613 [1st Dept 2022]).

---

[1] Although this motion originally sought relief against both defendants ConEd and Triumph Construction Corp. (Triumph), the branch of the motion against Triumph was resolved pursuant a motion conference stipulation and order, dated June 13, 2024, and the remainder of the motion, as against ConEd, was marked submitted (stipulation and order re Motion Seq. No. 001 [NYSCEF Doc. No. 124]).

**158874/2019   THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION**
**Motion No.  001**                                                    **Page 1 of 8**

1 of 8

## BACKGROUND

At the time of Wissert's deposition, Wissert testified that he was employed by ConEd as a "specialist," and that his duties in this position are to "search for records and testify about those records at depositions" (ConEd's exhibit A in opposition to motion [NYSCEF Doc. No. 119], Wissert deposition tr at 10, line 12 through 14, line 19). Wissert testified that he had been in this position for six months at the time of his deposition, and that it was his eighth time being deposed in connection to his employment with ConEd (*id.* at 7, line 25 through 8, line 18; 10, line 12 through 14, line 19). Wissert testified that he had been employed by ConEd for seven years, and had previously worked as an "operating supervisor" for three and a half years, in which he "supervised mechanics and responded to gas leaks" and before that he worked as a "business associate" where his duties were "[m]ore clerical [], such as filing and organizing paperwork" (*id.* at 10, line 12 through 14, line 19).

### Documents Reviewed By Wissert That Were Produced by ConEd

Wissert further testified that, in advance of his deposition, the only documents that he reviewed were from the "search result" that ConEd produced as a response, dated November 18, 2021, to plaintiff's notice of discovery and inspection (*id.* at 14, line 23 through 18 line 3). Wissert testified that in response to plaintiff's notice, on July 27, 2021, his supervisor Jennifer Grimm conducted a "standard two-year search"—meaning a search of ConEd's records for two years before the date of incident—for the western sidewalk running along Sixth Avenue "between West 57th Street and West 58th Street adjacent to 101 West 57th Street in Manhattan" (*id.* at 18, line 4 through 19, line 20).

Wissert testified that such a search is conducted using four databases: "dock search, summons search, emergency control system or ECS, and smart app" (id. at 19, line 21 through 21, line 15). Wissert testified that; the "[d]ock search contains DOT permit, opening tickets and paving orders"; the summons search contains, "Notices of Violations and Corrective Action Requests"; the "smart app" is a database that "contains opening tickets and paving orders", and that "before smart app, the tickets . . . and paving orders" were stored in the dock search"; and the "emergency control system" (ECS) stores "tickets that are created when an employee or someone from the public or someone from the city or anyone out in the public calls in to Con Edison with a complaint or any type of issue or emergencies such as a gas leak" (*id.*). Wissert testified that the subject search yielded "five permits and one ECS ticket" (*id.*) Wissert testified that these five permits and the ECS ticket constituted "all of the documents in Con Edison's possession related to the sidewalk of 6th Avenue between West 57th Street and West 58th Street adjacent to 101 West 57th Street in Manhattan for the dates between January 7, 2017 and January 7, 2019" (*id.* at 35, line 17 through 36, line 4).

**158874/2019  THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION**
**Motion No. 001**

**Page 2 of 8**

[* 2]

2 of 8

**The Permits**

Wissert gave specific testimony to each of the five permits, which can be identified as follows:

| Permit Number | Date of Issuance | Abbreviation |
|---|---|---|
| M012017286E07 | October 13, 2017 | E07 |
| M012018095E84 | April 5, 2018 | E84 |
| M012018134A | May 14, 2018 | 34A |
| M012018109A | July 9, 2018 | 09A |
| M012018213B | August 1, 2018 | 13B |

(*id.* at 21, line 16 through 32, line 25).

**Permit E07**

Wissert testified that Permit E07 was issued to ConEd on October 13, 2017 for "major installation high voltage" (*id.* at 21, line 16 through 24, line 7).  Wissert testified that based on the measurement stated in the permit, the work was to be performed in the roadway and not the sidewalk (*id.*).

When Wissert was asked if he could tell from the permit whether any work was in fact performed, Wissert testified that the permit only granted "authorization to perform work. It doesn't mean that work was performed. So the answer is, no, I cannot tell if work was performed" (*id.* at 22, line 25 through 23, line 11).

When asked if he knew the meaning of a notation on the permit that "says for the purposes of 613240/360/Triumph R-A-P-L-O-B-S-T, dock BWD-20115", Wissert testified, "I do not. The only thing I'm familiar with there is Triumph, which is a contractor that works for Con Edison" (*id.* at 23, line 24 through 24, line 7).

**Permit E84**

Wissert testified that Permit E84 was issued to ConEd on April 5, 2018, also for "major installation high voltage" (*id.* at 24, line 8 through 28, line 16).  Wissert further testified that Permit E84 was a "continuation" of the prior permit and that location for the work to be performed would be the same as the prior permit, but that he could not tell from the face of permit E84 whether the work was to be performed on the roadway or sidewalk (*id.*).

When Wissert was asked if he could tell from the permit whether any work was in fact performed, Wissert testified that he could not tell, and added that "in regard to that, if there was work that was performed, it would be in the form of an opening text and/or paving order, which none were found" (*id.* at 26, line 15 through line 24).

158874/2019   THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION
Motion No. 001

Page 3 of 8

3 of 8

[* 3]

When Wissert was asked if the fact that "no opening ticket or paving order" was found is an indication "that Con Edison did not perform work in the time referenced in the search at the location of 6th Avenue and 57th Street", Wissert stated that because there was "no opening ticket, I can't confirm whether or not there was work done" (*id.* at 26, line 25 through 27, line 11). When asked if work might ever be performed by ConEd without an opening ticket, Wissert testified, "I don't know."

Wissert testified that permit E84 makes mention of "Triumph, and then has in parentheses, contractor" (*id.* at 27, line 17 through line 24). When asked if ConEd might have any documents that could indicate whether Triumph performed work in the subject area "on behalf of Con Edison", Wissert testified, "I don't know" and that he did not know "who would know" (*id.* at 27, line 25 through 28, line 16).

### Permit 34A

Wissert testified that Permit 34A was issued to ConEd on May 14, 2018, and that it was a "continuation of the previous permit" (*id.* at 28, line 17 through 30, line 7). Wissert further testified that because "everything is the same as the previous permit," the location of the work to be performed would be the same as the previous permit, but from the face of the permit, he could not discern whether the work was to be performed on the sidewalk or the roadway (*id.*). Wissert further testified that he could not tell from the permit whether any work was performed pursuant to the permit (*id.*).

When asked if ConEd might have "any of Triumph's documents" that might indicate whether Triumph performed any work pursuant to the permit on behalf of ConEd, Wissert testified that he did not know, and he did not know who might know the answer to this question (*id.*).

### Permit 09A

Wissert testified that Permit 09A was issued to ConEd on July 9, 2018, and that it was a "continuation of the previous permit" (*id.* at 30, line 8 through 31, line 14). Wissert further testified that, from the face of the permit, he could not tell whether the work was to be performed on the roadway or on the sidewalk, and he could not tell whether the work was actually performed (*id.*). Wissert further testified that he did not know if ConEd had "any of Triumph's documents" that might bear on whether Triumph performed any work pursuant to the permit on behalf of ConEd (*id.*).

### Permit 13B

Wissert testified that Permit 13B was issued to ConEd on August 1, 2018, and that it was a "continuation of the previous permit" and had "the same measurement and information" as the previous permit (*id.* at 31, line 15 through 32, line 25). Wissert further testified that, from the face of the permit, he could not tell whether the work was to be performed on the roadway or on the sidewalk, and he could not tell whether the work was actually performed (*id.*). Wissert further testified that he did not know if

**158874/2019   THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION**
**Motion No.  001**

Page 4 of 8

[* 4]

ConEd had "any of Triumph's documents" that might bear on whether Triumph performed any work pursuant to the permit on behalf of ConEd (*id.*).

### The Emergency Control System (ECS) Ticket

Wissert testified that the ECS Ticket MS180034491 was generated in response to a certain "Ms. Jones, NYPD traffic" calling in a complaint on November 16, 2018 concerning "heavy steam from pipes" (*id.* at 33, line 5 through 35, line 5). Wissert further testified "I cannot tell" whether ConEd responded to the complaint and that he did not see "anything indicating that" (*id.*).

### Other Testimony By Wissert

Wissert further testified that if any work had been performed "by anyone that ConEd hired" then "an opening ticket" would have "shown up in the search" (*id.* at 38, line 4 through 39, line 20).

After giving this testimony, Wissert was shown a document marked as "Defendants' Exhibit A", that was identified as being "Bates stamped 330-DOT00685 through 00691" and was part "part of the records production of The New York City in this case" (*id.* at 39, line 21 through 41, line 24). Wissert testified that he recognized the first three pages as "the permit that came up in the ConEd search" but that he did not recognize the fourth page and that he had never "seen a document like this before" (*id.*).

Wissert was also shown "Defendants' Exhibit B", that was identified as a "13-page PDF" bearing Bates stamp numbers "330-DOT007755 through … 00767" (id. at 41, line 25 through 48, line 12). Wissert testified that he recognized the first three pages of this document to be a DOT "permit ending with A09" and that the permit was not produced by ConEd as part of ConEd's search in this action (*id.*). When asked if he knew why the permit "wouldn't come up in ConEd['s] search", Wissert stated that he did not know (*id.*). Wissert testified that the permit was "valid during the period of time that ConEd searched for", but that the A09 permit "is an intersection permit for 6th Avenue and West 57th, or what seems to be different measurements" (*id.*). Wissert further testified that he did not recognize pages 5 through 13 of the document, even though he recognized "the ConEd logo on the top left of the document" (*id.* at 44, line 13 through 48, line 12). Wissert further testified that he did not know what a "cable obstruction report is" and that he did not know anybody "within ConEd who might be able to better discuss cable obstruction with" the questioning attorneys (*id.* at 48, line 3 through 12).

Wissert further testified that ConEd's search would not "have revealed any contract involving Con Edison for work in the area" (*id.* at 50, line 18 through 22).

When Wissert was subsequently questioned by counsel for Triumph concerning Permits E07, E84, 34A, 09A, and 13B, Wissert testified these permits "granted authorization to work in the intersection and the roadway" (*id.* at 56, line 2 through 58, line 3).

**158874/2019   THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION**
**Motion No.  001**

**Page 5 of 8**

## DISCUSSION

**I.        Whether ConEd Must Provide Another Witness for Deposition**

CPLR 3101 states that there "shall be full disclosure of all matter material and necessary in the prosecution or defense of an action."  "[M]aterial and necessary" are "to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (*Allen v Crowell-Collier Pub. Co.*, 21 NY2d 403, 406 [1968]).  "[T]he acid test for disclosure of information is not whether the party can make out a prima facie case without the evidence, but whether he or she can make out a more persuasive case with it" (6 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 3101.08 [2024]).

"It is incumbent on the party seeking disclosure to demonstrate that the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims" (*Vyas v Campbell*, 4 AD3d 417, 418 [2d Dept 2004]; *see also Twenty Four Hour Fuel Oil Corp. v Hunter Ambulance*, 226 AD2d 175-176 [1st Dept 1996]).  However, "[u]nder our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party" (*Kavanagh v Ogden Allied Maintenance Corp.*, 92 NY2d 952, 954 [1998] [quotation marks and citation omitted]).

"For purposes of depositions, a corporate entity has the right to designate, in the first instance, the employee who shall be examined" (*Asprou v Hellenic Orthodox Community of Astoria*, 185 AD3d 638, 639 [2d Dept 2020]).  A party seeking an additional deposition of another party must make a "detailed showing" of the necessity for taking additional depositions, in that the witness already deposed had "insufficient information," and that there is a "substantial likelihood that those sought to be deposed possess information necessary and material to the prosecution of the case" (*Alexopoulos v Metropolitan Transp. Auth.*, 37 AD3d 232, 233 [1st Dept 2007]).

Here, while Wissert had some knowledge of ConEd's business, he also clearly had insufficient information as to the areas of ConEd's business that are at issue in this case.  Most problematic, Wissert was unable to testify as to whether ConEd in fact performed the work that it received permits to perform.  Indeed, although ConEd's counsel contends that "Con Edison's witness testified that there was **no** work performed at the alleged accident location" (affirmation in opposition [NYSCEF Doc. No. 118] ¶ 13, citing Wissert deposition tr at "pgs. 23, 29"), such contentions are flatly contradicted by Wissert's testimony.  Wissert in fact testified—repeatedly—that "the answer is, no, I cannot tell if work was performed" (Wissert deposition tr at 22, line 25 through 23, line 11; *see also id.* at 26, line 15 through 27, line 11 [testifying that the permit "indicates to me that we were granted authorization to perform work, but since there was no opening ticket, I can't confirm whether or not there was work done"]).

**158874/2019   THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION**                    **Page 6 of 8**
**Motion No.  001**

6 of 8

[* 6]

In addition, Wissert further testified that he did not know whether work might ever be "done by Con Edison without an opening ticket" (*id.* at 27, line 12 through 16). Wissert testified that he did not know whether ConEd might have "any of Triumph's documents" that might indicate whether Triumph performed any work pursuant to the permits on behalf of ConEd at the subject location, and that he did not know who might know the answer to this question (*id.*).

In opposing this motion, ConEd's counsel argues "[i]f work was performed in the sidewalk or the roadway by Con Edison or a contractor, **only** an opening ticket and/or a paving order would indicate if work was performed but **no** such documents were found in the search" (affirmation in opposition ¶ 8). Although there is authority for the proposition that "[t]he mere fact" that a permit is issued to a party is "insufficient to raise a triable issue of fact as to whether [that party] performed work" in that permitted area (*Cruz v Keyspan*, 120 AD3d 1290, 1291 [2d Dept 2014]), plaintiff and ConEd's co-defendants must be given an opportunity to probe whether ConEd performed such work during the discovery phase of this action.

ConEd's counsel also complains that "Hilton failed to attach what records they are relying on to further obtain another deposition of a Con Edison witness" (affirmation in opposition ¶ 9). However, given that Wissert's insufficient knowledge is clearly laid bare by his testimony, reference to the underlying documents—which perhaps may have been helpful—is not necessary for the court to decide this motion. Further, at the deposition, ConEd's counsel expressed strong concerns about some of ConEd's documents being e-filed "because we do not like to share these since 9/11" and stated that ConEd would be asking the parties to sign a confidentiality agreement (Wissert deposition tr at 44, line 22 through 46, line 7). Given such concerns, the court cannot fault movant for not e-filing the underlying records. Rather, the onus was arguably on ConEd to move to seal such documents pursuant to 22 NYCRR 216.1 (a).[2]

Although movants do not point to a potential deponent from ConEd for which there is a "substantial likelihood" that the deponent will "possess information necessary and material to the prosecution of the case" (*Alexopoulos*, 37 AD3d at 233)—and ConEd does not contend that no such witness exists—Wissert's deposition transcript itself suggests that, at the very least, there is a substantial likelihood that Wissert's supervisor Jennifer Grimm possesses such knowledge given that Grimm conducted the search and, as Wissert's supervisor, she presumably has superior knowledge of the areas about which Wissert testified (*Longo v Armor El., Co., Inc.*, 278 AD2d 127, 128-29 [1st Dept 2000] ["The deposition of the employee previously produced by Sumitomo indicated that that employee was not knowledgeable as to circumstances relevant to the presently litigated issues of notice and causation, but that Yano was"]).

---

[2] The court notes that it is unclear whether the documents that ConEd's counsel argues should have been attached on this motion, in paragraph 8 of the opposition papers, are the same as the ones she claimed were confidential at the deposition. However, if such documents could have been e-filed for public view, ConEd's counsel could have also attached them if she believed they might support her argument that an additional deposition was unwarranted.

**158874/2019   THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION**                    **Page 7 of 8**
**Motion No.  001**

## II. Whether Discovery Sanctions Are Appropriate Against ConEd

"[I]t is well settled that the drastic remedy of striking a party's pleading pursuant to CPLR 3126 for failure to comply with a discovery order is appropriate only where the moving party conclusively demonstrates that the non-disclosure was willful, contumacious or due to bad faith. Willful and contumacious behavior can be inferred by a failure to comply with court orders, in the absence of adequate excuses."

(*Henderson-Jones v City of New York*, 87 AD3d 498, 504 [1st Dept 2011] [internal citation and quotation marks omitted]).

It is difficult for the court to understand what ConEd's good faith basis was for resisting the production of another witness with sufficient knowledge, given that Wissert's deposition so clearly indicates Wissert's insufficient knowledge and presents Jennifer Grimm as an obvious witness that would have a substantial likelihood of possessing the knowledge that her subordinate Wissert lacked. Nonetheless, the court does not find a "pattern of noncompliance" with prior court orders to establish ConEd's willfulness to warrant striking its answer or a conditional order of preclusion (*Continental Indus. Group, Inc. v Ustuntas*, 173 AD3d 419, 420 [1st Dept 2019]).

## CONCLUSION

Accordingly, upon the foregoing documents, it is hereby **ORDERED** that the discovery motion by defendant Hilton Resorts Corporation (Hilton) is **GRANTED TO THE EXTENT** that defendant Consolidated Edison Company of New York, Inc. (ConEd) shall produce a witness with sufficient knowledge for deposition on or before January 13, 2025, and the motion is otherwise denied.

20241003111719RTSAI03CC0DD04AB848EF8A1DB28BCBDC9FAF

_____
**10/3/2024**
**DATE**

_____
**RICHARD TSAI, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**158874/2019   THOMAS, JOCELYNE vs. METROPOLITAN TRANSPORTATION**
**Motion No.  001**

Page 8 of 8

8 of 8

[* 8]