| **Scott v New York City Tr. Auth.** |
| :---: |
| 2025 NY Slip Op 31254(U) |
| April 11, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 157388/2020 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. RICHARD TSAI**                           PART                          21

*Justice*

-----------------------------------------------------------------------------X

ZACHARY SCOTT,

                                    Plaintiff,

                           - v -

THE NEW YORK CITY TRANSIT AUTHORITY,
METROPOLITAN TRANSPORTATION AUTHORITY, MTA
BUS COMPANY, INC. and FRANCIS LAURO,

                                   Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 157388/2020 |
| MOTION DATE | 1/10/2025 |
| MOTION SEQ. NO. | 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 005) 55-85[1]

were read on this motion to/for                  STRIKE PLEADINGS        .

      In this action, plaintiff Zachary Scott alleges that, on July 3, 2019, at approximately 7:36 p.m., he was riding his bicycle in the vicinity of Broadway and West 3rd Street in Manhattan, when he was struck by a bus owned by defendant New York City Transit Authority (NYCTA) and operated by defendant Francis Lauro (complaint [NYSCEF Doc. No. 1] ¶¶ 11-31]; *see also* answer [NYSCEF Doc. No. 19] ¶¶ 1-5 [admitting that NYCTA owned the subject bus and that Lauro was employed by NYCTA]).

      On this motion, plaintiff seeks an order from this court (1) striking defendants' answer, pursuant CPLR 3126, "on the grounds that said defendants have willfully, and intentionally failed to provide the data from the Electronic Control Module and instead committed a fraud on the Court by affirmatively misrepresenting the existence of this discovery", (2) for costs and sanctions, pursuant to 22 NYCRR § 130-1.1, and (3) for "such other and further relief as to this Honorable Court may seem just and proper" (notice of motion [NYSCEF Doc. No. 55]). Defendants oppose the motion.

      The dispute in this motion centers on data from the Electronic Control Module (ECM) of the subject bus. When plaintiff had demanded discovery of the ECM data, defendants responded that there was no ECM data for the bus. However, plaintiff later learned from a deposition of defendants' witness that ECM data was downloaded from the bus. When this was brought to the attention of defendants' counsel, defendants purportedly turned over the ECM data, but plaintiff argues that defendants should be sanctioned for falsely representing that the ECM data did not exist.

---

[1] The court also read the transcript of the oral argument of January 10, 2025 which was provided by plaintiff's counsel.

**157388/2020  SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**                    **Page 1 of 18**
  Motion No.  005

1 of 18

## BACKGROUND

According to defendants, all NYCTA buses "regardless of age, are equipped with Electronic Control Modules ("ECM"), the computers that run the engine" (exhibit 3 to defendants' sur-reply, aff of Davian Cowan [NYSCEF Doc. No. 81] ¶ 6).

According to plaintiff's counsel, on or about May 3, 2022, defendants produced a document titled Supervisor's Accident/Crime Investigation Report, dated July 3, 2019, and signed by Surface Line Dispatcher (SLD) Robert McCaffrey (the McCaffrey Report) (affirmation of plaintiff's counsel in support of motion [NYSCEF Doc. No. 57] ¶¶ 4-5; *see also* plaintiff's exhibit A in support of motion [NYSCEF Doc. No. 58], Post Accident Investigation Documents including the McCaffrey Report).  According to the McCaffrey Report, following the accident, the subject bus was "sent to the yard" and "L/S Moore did the 'Download'" (Post Accident Investigation at 8 of 35).  A one-page brief of the incident also indicated, in relevant part:

(*see* plaintiff's exhibit A in support of motion).

Plaintiff's counsel states that, on June 8, 2022, "[a]fter receiving" the McCaffrey Report (affirmation of plaintiff's counsel in support of motion ¶ 5), he served a supplemental demand dated June 8, 2022 on defendants for, among other things: "A copy of all data from the Electronic Control Module (ECM) for [the subject bus] for the date of the accident, July 3, 2019, taken with respect to this accident.  This should include copies of any and all print-outs and other computer-generated reports" (plaintiff's exhibit B in support of motion [NYSCEF Doc. No. 59] ¶ 1).

There is no dispute that, on or about June 22, 2022, defendants' counsel served a response objecting to plaintiff's demand, but stating "[o]ver objection, said bus was not equipped with ECM on July 3, 2019" (plaintiff's exhibit C in support of motion [NYSCEF Doc. No. 60], defendant's June 22, 2022 response ¶ 1).  According to plaintiff's counsel, based on this "affirmative representation by counsel," he "did not seek additional discovery on this issue" (affirmation of plaintiff's counsel in support of motion ¶ 7).

According to plaintiff's counsel, it was not until he took the deposition of McCaffrey, on October 1, 2024, that the issue of the bus's ECM data resurfaced (*id.*).  During McCaffrey's deposition, McCaffrey testified as follows:

"Q.    Okay. Then it reads 'L/S Moore did the download.' And what does that mean?
A.     He's a line supervisor. He comes with a laptop, hooks up to the bus, and does a download of all the information, speed, engine, braking - - all -- all the information on what was going on, on the bus at that time.

**157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**                       **Page 2 of 18**
**Motion No.  005**

[* 2]

Q.     So the download done by L/S Moore would give us the speed that
       the bus is traveling at the moment of the impact?
A.     Speed and probably braking, engine, diagnostic. Stuff like that.
Q.     Now, is that information that you had access to when you prepared
       this particular report?
A.     No"

(plaintiff's exhibit D in support of motion [NYSCEF Doc. No. 61], McCaffrey EBT at 101,
line 19 through 102, line 13).

Plaintiff's counsel states that he found this testimony "quite shocking" because,
defendant's counsel had responded to his supplemental demand that the subject bus
was "'not equipped with ECM'"—back in June 2022 (affirmation of plaintiff's counsel in
support of motion ¶ 9, quoting defendant's June 22, 2022 response ¶ 1).

Plaintiff's counsel asserts that, the next day, he emailed defendant's counsel
"demanding the data from the ECM download" (*id.* ¶ 10).  Plaintiff's counsel also
submits a copy of that October 2, 2024 email, wherein he requests "the data from the
ECM module that was downloaded by L/S Moore at the time of the incident," among
four other numbered items (plaintiff's exhibit E in support of motion [NYSCEF Doc. No.
62], October 2, 2024 email).

On October 17, 2024, counsel for the parties appeared before this court for a
status conference.  Plaintiff's counsel asserts that defendants' counsel "was unable to
offer any explanation" when she was "confronted with the false statement concerning
the existence of ECM data" (affirmation of plaintiff's counsel in support of motion  ¶ 11).

Regarding the October 17, 2024 conference, defendants' counsel asserts that
she "cannot now recall the details of that prolonged conference well enough to speak to
plaintiff's accusation in the motion that she was unable to offer an explanation" as to the
ECM data, but notes that the attorney who appeared on the day of that conference was
not the affirmant on plaintiff's motion papers who now accuses her of being unable to
offer an explanation (affirmation of defendants' counsel in opposition to motion ¶ 16
[NYSCEF Doc. No. 65] ¶ 16).[2]

During that October 17, 2024 status conference, counsel for the parties entered
into a so-ordered stipulation whereby plaintiff was to serve "comprehensive demands for

_____

[2] As defendants' counsel further notes, "[u]nfortunately, in light of these later events, no reporter
was requested and there is no record of the discussion" at the October 17, 2024 discovery
conference (affirmation of defendants' counsel in opposition ¶ 6).  Although the conference was
scheduled to begin at 9:30 a.m. that morning, the parties did not submit a proposed order until
12:45 p.m., roughly 15 minutes before the morning discovery conference were to end due to the
lunch recess.  As it became clear that there was disagreement between the parties regarding
what should be made part of the order, the parties agreed to return after the lunch recess to
discuss the issues further.

[* 3]

outstanding items w/in [within] 3 days" and defendants were "to respond w/in [within] 30 days" (defendants' exhibit 2 in opposition to motion [NYSCEF Doc. No. 67], October 17, 2024 So-Ordered Status Conference Stipulation).

Further, defendants' counsel submits an email, timestamped October 17, 2024 at 4:27 p.m., that she received from plaintiff's counsel, who is the affirmant on the instant motion papers, stating in relevant part: "I spoke to [the attorney who appeared on behalf of plaintiff at the October 17, 2024 conference] and was advised what the Court suggested to resolve the outstanding discovery. We are going to serve a demand for the discovery previously demanded and TA will respond to same" (defendants' exhibit 3 in opposition to motion [NYSCEF Doc. No. 68], email from plaintiff's counsel).

Apparently, several hours after plaintiff's counsel sent that email, plaintiff's counsel—again, the affirmant on plaintiff's motion papers here—sent another email to defendants' counsel, timestamped October 17, 2024 at 9:26 p.m., complaining that defendants' counsel's response of June 22, 2022—namely, her response the bus was "not equipped with ECM"—was inaccurate (plaintiff's exhibit F in support of motion [NYSCEF Doc. No. 63], email from plaintiff's counsel). In that email, plaintiff's counsel further stated:

> "The Supervisors Accident report completed on the DOA by Robert McCaffrey provides that Line Superintendent Moore performed a "dowlnad" [sic] of the data from the ECM module on the date of the accident. The testimony from Supt. McCaffrey confirmed that LS Moore did in fact download the data from the bus after the incident.
>
> Pursuant to Rule 130 an attorney is obligated to conduct a 'reasonable' inquiry into circumstances alleged in a pleading or discovery response. Here, you either failed to conduct such an inquiry or intentionally misled the plaintiff to believe that there was no ECM in this bus. Under either scenario your conduct is reprehensible and supports a motion to strike defendants answer as well as for costs and sanctions. Your actions in failing to provide this information has deprived plaintiff of the opportunity to review same with an expert and question the various TA witnesses including the bus operator about the data. Plaintiff has been severely and irreparably prejudiced by these actions.
>
> In a last good faith effort to avoid filing the motion, please respond by the end of business on October 18, 2024 whether NYCTA will provide the data from the ECM by October 31, 2024 and thereafter produce the bus operator and for a further deposition where he could be questioned about this data.
>
> Plaintiff will not extend either of the deadlines and failure to comply will result in motion practice on this issue, separate and apart from the other discovery that remains outstanding. Guide yourself accordingly" (*id.*).

[* 4]

Plaintiff's counsel asserts that defendants' counsel "failed to respond to the e-mail, provide the ECM data or offer any explanation for affirmatively mispresenting that there was not ECM data for this accident when in fact there was" (affirmation of plaintiff's counsel in support of motion ¶ 13).

According to defendants' counsel, on October 21, 2024, plaintiff's counsel, who is the affirmant on this motion, emailed her a letter "[a]s per the directives of the Court's October 17, 2024. . . detailing the deficiencies in the discovery owed defendants New York City Transit Authority (NYCTA) [sic]" (defendants' exhibit 4 in opposition to motion [NYSCEF Doc. No. 69]). In the letter attached to the email, plaintiff requested, as item number 5 (among 7 numbered items):

> "A copy of all data from the Electronic Control Module (ECM) for Bus No. 4323 including but not limited to print-outs, raw data, interpreted data and other information obtained through the 'download' from the subject bus. This discovery was previously included in plaintiff's supplemental demand June 8, 2022 (Exhibit "E") as well as a second demand dated October 1, 2024 and is specifically referenced in the Supervisors Accident Report from the date of the incident. This discovery will also be the subject of motion practice" (defendants' exhibit 5 in opposition [NYSCEF Doc. No. 70], letter attached to email).

On October 29, 2024, plaintiff efiled the motion now before this court.

By an interim order dated and entered December 5, 2024, this court granted defendants' counsel's request for leave to submit sur-reply papers (*see* NYSCEF Doc. No. 77).

On January 10, 2025, oral argument via MS Teams was held on the stenographic record (Cheryl-Lee Lorient, court reporter).

### DISCUSSION

I.     **Plaintiff's Objections to Potentially New Arguments and Factual Assertions Made in Sur-Reply**

In response to the sur-reply papers, plaintiff's counsel argues that defendants' counsel's sur-reply papers exceeded the scope permitted by this court's interim order (*see* second reply affirmation of plaintiff's counsel ¶ 10).

During oral argument, defendants' counsel stated, "I, in the need to expedite my request to the Court for leave to make the sur-reply, asked for the leave based on what I first saw; which was the obvious problem with the Montalvo data" but that after "I sat down and really looked at that reply and saw all of the new things that counselor had put in, I had to respond to them. I would be doing my client a disservice if I did not" (oral

157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT          Page 5 of 18
Motion No.  005

5 of 18

[* 5]

argument tr at 28, line 20 through 29, line 2). When the court pointed out that plaintiff's counsel had an opportunity to use his response to the sur-reply to respond on the merits to any portion of defendants' counsel's sur-reply that purportedly exceeded the scope, plaintiff's counsel argued that it would nonetheless be improper to consider such arguments because that would not be "the way that this normally works" (*id.* at 29, line 8 through 31, line 9).

Preliminarily, the court must therefore address plaintiff's counsel's argument that this court must reject any potentially new arguments or new factual assertions made by defendants' counsel after the opposition papers were filed. The court rejects plaintiff's contention.

> "The prohibition against accepting material in reply papers that was established in *Ritt v. Lenox Hill Hosp.* and its progeny is directed at the introduction of 'new arguments in support of, or new grounds for the motion,' at a point in the proceedings when the opposing party has no opportunity to respond" (*Sanford v 27-29 W. 181st St. Ass'n, Inc.*, 300 AD2d 250, 251 [1st Dept 2002] [internal citations omitted]).

Thus, "[a]rguments raised for the first time in reply may be considered if the original movant is given the opportunity to respond and submits papers in surreply" (*Gluck v New York City Tr. Auth.*, 118 AD3d 667, 668 [2d Dept 2014]). Thus, it logically follows that arguments raised for the first time in a sur-reply may be considered if the opposing party is given the opportunity to respond to the sur-reply, which occurred here.

Here, the interim order did not specifically limit the scope of defendants' sur-reply. Plaintiff's counsel was given leave to respond to the sur-reply, and the parties were also granted oral argument. Thus, neither party was without an opportunity to respond, on the merits, to any arguments they may have felt were improperly raised in the additional round of briefing.

## II. Branch of Plaintiff's Motion to Strike the Answer, Pursuant to CPLR 3126

Contrary to the argument of plaintiff's counsel, the branch of plaintiff's motion to strike defendants' answer is a discovery motion that is subject to the good faith requirement under 22 NYCRR 202.20-f. As discussed in greater detail in the following paragraphs, the court finds that plaintiff's counsel did not engage in a "good faith effort to resolve all disputes about disclosure" (22 NYCRR 202.20-f [b]). Therefore, the branch of plaintiff's motion to strike the answer, pursuant to CPLR 3126, is denied (*Bayview Loan Servicing, LLC v Evanson*, 230 AD3d 1091, 1092 [2d Dept 2024]).

In plaintiff's counsel's reply and response to defendants' sur-reply, as well as at oral argument, plaintiff's counsel apparently argues that he was "under no obligation" to make good faith efforts to resolve the issues in this motion because he was "not seeking an order directing defendants to provide the ECM data and related reports" but was rather seeking "an order striking defendants answer and imposing sanctions for the

157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT                    Page 6 of 18
  Motion No.  005

6 of 18

[* 6]

fraudulent and willful misrepresentations" purportedly made by defendants' counsel in regards to the ECM data (reply affirmation of plaintiff's counsel ¶ 23; *see also* plaintiff's second reply affirmation [NYSCEF Doc. No. 83] ¶ 20 ["Plaintiff maintains that there was no good faith requirement was necessary as plaintiff is not seeking to compel certain discovery"]; oral argument tr at page 19, line 7 through page 23, line 22).

Plaintiff's counsel's argument that he was not required to engage in good faith efforts to resolve the issues before making this motion is contrary to the law (*241 Fifth Ave. Hotel, LLC v GSY Corp.*, 110 AD3d 470, 471-72 [1st Dept 2013] ["A party moving to strike a pleading pursuant to CPLR 3126 is required to submit an affirmation that counsel for the moving party has made 'a good faith effort to resolve the issues raised by the motion' with opposing party's counsel"] [quoting Uniform Rules for Trial Cts [22 NYCRR] 202.7]).

It is true that a "further attempt to resolve non-judicially" a discovery dispute is not required when it would be "futile" (*Suarez v Shapiro Family Realty Assoc.*, LLC, 149 AD3d 526, 527 [1st Dept 2017]).  However, here, counsel for the parties had resolved the discovery dispute at the October 17, 2024 conference.

As mentioned, on October 17, 2024, counsel for the parties entered into a so-ordered stipulation whereby plaintiff was to serve "comprehensive demands for outstanding items w/in 3 days" and defendants were "to respond w/in 30 days" (defendants' exhibit 2 in opposition [NYSCEF Doc. No. 67]).  Although neither counsel for the parties nor this court can recall whether the ECM data was specifically discussed at that conference, there does not appear to be any reason that plaintiff's demand for the ECM data was intended to be excluded from the "comprehensive demands for outstanding items" that plaintiff would serve on defendants in the following three days—and plaintiff has not made any argument for why the parties or the court would think otherwise.[3]

However, roughly five hours after sending that email, plaintiff's counsel emailed defendants' counsel accusing defendants' counsel of engaging in "reprehensible" conduct that was either the result of her having "failed" to conduct a reasonable inquiry in response to plaintiff's counsel's June 8, 2022 demand or that defendant's counsel "intentionally misled the plaintiff to believe that there was no ECM in this bus" (email from plaintiff's counsel timestamped October 17, 2024 at 9:26 p.m.).  "In a last good faith effort to avoid filing the motion," Plaintiff's counsel informed defendants' counsel that the latter had until the close of business on the following day to indicate whether defendants would "provide the data from the ECM by October 31, 2024 and thereafter

---

[3] In fact, this understanding would have appeared to have been shared by plaintiff's counsel when he wrote to defendants' counsel at 4:27 p.m. on October 17, 2024 that the attorney appearing on plaintiff's behalf had advised him that "the Court suggested to resolve the outstanding discovery. We are going to serve a demand for the discovery previously demanded and TA will respond to same" (email from plaintiff's counsel timestamped October 17, 2024 at 4:27 p.m.).

157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT
Motion No.  005

Page 7 of 18

7 of 18

[* 7]

produce the bus operator and for a further deposition where he could be questioned about this data" (*id.*).

Here, the October 17, 2024 status conference arguably constituted the parties good faith efforts to resolve the issues on this motion. However, plaintiff's counsel then negated those good faith efforts hours later when, in his 9:26 p.m. email, he purported to unilaterally shorten the discovery deadlines set forth in the so-ordered status conference stipulation from earlier that day from 30 days from October 17, 2024, to October 31, 2024. This reversal by plaintiff's counsel did not constitute a good faith effort to resolve the outstanding discovery (*see e.g. Amherst Synagogue v Schuele Paint Co., Inc.*, 30 AD3d 1055, 1056-57 [4th Dept 2006]).

In any event, even if this court were to have found that plaintiff's counsel engaged in good faith efforts to resolve the issues raised in this motion, this court would not strike the answer.

Defendants' counsel provides an affidavit from George Herrera, the Deputy Manhattan Borough Claims Manager for defendant Metropolitan Transportation Authority Law Department – Torts, and who regularly performs "investigative duties, including requesting documents" in relation to lawsuits against defendant NYCTA (defendants' exhibit 4 to sur-reply papers [NYSCEF Doc. No. 82], Herrera affidavit ¶¶ 1-3). Herrera states that "[a]ccording to my records, on December 17, 2020, I made the routine investigation requests in the ordinary course of business associated with a bus-bicyclist incident for the above captioned matter", which included requests to "the Department of Buses Accident Investigation unit for downloads from the engine from bus 4323 [the subject bus]" (*id.* ¶¶ 4-5). Herrera states that, in response to his request, he was told "that this was a 2007 bus and there were no accident data pages" (*id.* ¶ 6).

Herrera further states that, on October 17, 2024, defendants' counsel asked him "to investigate the claim that an 'ECM' download had been made from bus 4323 related to the incident" (*id.* ¶ 7). Herrera states that he "referred the question to Superintendent of Accident Investigation Davian Cowan", and that, on October 18, 2024, Cowan "forwarded an email with three electronic files with the extension .xml and an Excel document titled 'Download Check Sheet'" to himself and defendants' counsel (*id.* ¶¶ 8-10).

> "[I]t is well settled that the drastic remedy of striking a party's pleading pursuant to CPLR 3126 for failure to comply with a discovery order is appropriate only where the moving party conclusively demonstrates that the non-disclosure was willful, contumacious or due to bad faith. Willful and contumacious behavior can be inferred by a failure to comply with court orders, in the absence of adequate excuses" (*Henderson-Jones v City of New York*, 87 AD3d 498, 504 [1st Dept 2011] [internal citation and quotation marks omitted]).

157388/2020  SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT
Motion No.  005

Page 8 of 18

8 of 18

[* 8]

Here, plaintiff has not established the "repeated and persistent failure to comply with successive disclosure orders" to enable the court to find defendants' conduct to be "willful and contumacious" (*Nugent v The City of New York*, 2019 NY Slip Op 32410[U], 3 [Sup Ct, NY County 2019], *affd sub nom. Nugent v City of New York*, 189 AD3d 631 [1st Dept 2020]).

Neither has plaintiff established that defendants had acted in bad faith. While defendants' counsel inaccurately stated that the ECM data did not exist in her June 22, 2022 response, this was a single misstatement, which defendants' counsel promptly corrected after it was brought to her attention (*see Brigham v Jaffe*, 189 AD3d 475, 476 [1st Dept 2020] ["Mere lack of diligence in furnishing some of the requested materials is not grounds for dismissal of the action"]; *Unanue v Rennert*, 14 AD3d 360, 361 [1st Dept 2005] [holding that dismissal was "unduly harsh" because "the discovery non-compliance related to a single order, the information sought did not go to the essence of [the movant's] ability to present its position at trial, and plaintiff sought to cure the non-compliance"]).

Plaintiff's counsel relies heavily on the case of *Asim v City of New York*, which imposed sanctions, pursuant to 22 NYCRR 130–1.1, and struck the answer of "Metropolitan Transportation Authority (MTA), New York City Transit Authority, and Manhattan and Bronx Surface Transit Operating Authority (collectively, the Authority)" (117 AD3d 655, 656 [1st Dept 2014]). There, the Appellate Division, First Department reasoned that such sanctions were warranted because, among other things, "[f]or four years and despite discovery orders, the Authority failed to acknowledge ownership of the MTA police vehicle that caused plaintiff's injuries or to disclose the name of the driver of the vehicle" (*id.*). "In addition, while the Authority initially stated that the incident was 'unreported,' it disclosed an incident report after plaintiff moved for discovery sanctions. The Authority failed to provide an excuse for the late disclosure of the report and the driver's identity" (*id.*).

In this court's view, *Asim* does not stand for the proposition that an incorrect representation about the existence of an item of discovery (i.e., that an incident report did not exist) warrants the drastic sanction of striking of a pleading. *Asim* must be read in its context: the Authority repeatedly failed to acknowledge its ownership of the subject vehicle—clearly a material fact—and withheld disclosure for years and in violation of multiple court orders. Unlike *Asim*, the present case involves a single incorrect representation about the existence of a single item of discovery that does not appear to be a key piece of evidence that plaintiff needs to prove defendants' liability, and the discovery was promptly turned over once it was brought to the attention of defendants' counsel.

In the moving papers, plaintiff's counsel asserts that "[d]efendant has clearly perpetrated a fraud on the court" (affirmation in support ¶ 16).

"Apart from CPLR 3126, a court has inherent power to address actions which are meant to undermine the truth-seeking function of the judicial system and place in

157388/2020 SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT Page 9 of 18
Motion No. 005

9 of 18

[* 9]

question the integrity of the courts and our system of justice" (*CDR Creances S.A.S. v Cohen*, 23 NY3d 307, 318 [2014]).

> "Fraud on the court involves wilful conduct that is deceitful and obstructionistic, which injects misrepresentations and false information into the judicial process so serious that it undermines the integrity of the proceeding. It strikes a discordant chord and threatens the integrity of the legal system as a whole, constituting a wrong against the institutions set up to protect and safeguard the public.

> \*\*\*

> "[I]n order to demonstrate fraud on the court, the nonoffending party must establish by clear and convincing evidence that the offending party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action. A court must be persuaded that the fraudulent conduct, which may include proof of fabrication of evidence, perjury, and falsification of documents concerns issues that are central to the truth-finding process. Essentially, fraud upon the court requires a showing that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense" (*id.* at 318-321 [internal quotation marks, citations and emendation omitted]).

The Court of Appeals has stated that "fraud on the court may warrant termination of the proceedings in the nonoffending party's favor" but cautions that this is "an extreme remedy that must be exercised with restraint and discretion" (*id.* at 321).

Here, plaintiff has "failed to show by clear and convincing evidence that defendants' alleged misstatement[] w[as] particularly egregious and characterized by lies in furtherance of a scheme designed to conceal critical matters from the court" (*Peters v Peters*, 146 AD3d 503, 503 [1st Dept 2017]).

Although defendants' counsel admits, "[w]e don't look great" (oral argument tr at 43, lines 14-15), such a "lack of diligence in furnishing the requested materials does not support striking the [answer]" (*Ortiz v Montefiore Med. Ctr.*, 235 AD3d 412, 414-15 [1st Dept 2025]).

For all of these reasons, the branch of plaintiff's motion to strike the answer, pursuant to CPLR 3126, is denied.

157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT
Motion No.  005

Page 10 of 18

10 of 18

### III. Branch of Plaintiff's Motion for Sanctions for Frivolous Conduct Pursuant to 22 NYCRR 130-1.1

Plaintiff's counsel seeks an award of costs and fees in making this motion on the grounds that defendants' counsel's June 22, 2022 response that the bus "was not equipped with ECM on July 3, 2019" amounted to frivolous conduct. Plaintiff's counsel further argues that defendants' counsel also violated 22 NYCRR 130-1.1a (b) (1).

#### A. Frivolous Conduct under 22 NYCRR 130-1.1

"Pursuant to 22 NYCRR 130–1.1, a court, in its discretion, after a reasonable opportunity to be heard, may impose sanctions against a party or the attorney for a party, or both, for frivolous conduct" (*Muhametaj v Town of Orangetown*, 195 AD3d 627, 627-28 [2d Dept 2021]). "The party seeking sanctions has the burden to demonstrate that its opponent's conduct was frivolous within the meaning of 22 NYCRR 130–1.1(c)" (*U.S. Bank N.A. v Tait*, 234 AD3d 889, 892 [2d Dept 2025])

Pursuant to 22 NYCRR 130-1.1 (c), conduct is frivolous if:

"(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
(2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
(3) it asserts material factual statements that are false" (*id.*).

Here, plaintiff's counsel argues that defendants' counsel's June 22, 2022 response amounted to frivolous conduct because, pursuant to subsection (c) (3), defendant's counsel asserted material factual statements that were false.

"In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party" (*id.*; *see also Muhametaj v Town of Orangetown*, 195 AD3d 627, 627-28 [2d Dept 2021] ["In determining if sanctions are appropriate, the court looks at the broad pattern of conduct by the offending attorneys or parties"]).

To be sure, the June 22, 2022 response that the bus "was not equipped with ECM on July 3, 2019" was incorrect. However, the statement was "not so egregious as to constitute frivolous conduct within the meaning of 22 NYCRR 130–1.1" (*Gowen v Helly Nahmad Gallery, Inc.*, 226 AD3d 619 [1st Dept 2024]).

**157388/2020 SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**
**Motion No. 005**

**Page 11 of 18**

11 of 18

As detailed in the record before this court, defendants' counsel's June 22, 2022 response that the bus "was not equipped with ECM on July 3, 2019" was based on information that defendants' counsel received from Herrera, in response to Herrera's "routine investigation requests" to "the Department of Buses Accident Investigation unit for downloads" (Herrera affidavit ¶¶ 4-5).[4]  According to Herrera, he was told that "this was a 2007 bus and there were no accident data pages" (*id*. 6), and according to defendants' counsel, she "relied on the result of a routine investigation, to wit that there were no accident data pages from the subject related to the subject accident" (affirmation of defendants' counsel in sur-reply ¶ 31).

After plaintiff's counsel brought the issue to defendants' counsel's attention, the parties agreed to a schedule for plaintiff's counsel to provide "comprehensive demands" and for defendants' to provide responses per the October 17, 2024 so-ordered status conference stipulation. Defendants' counsel immediately investigated the matter further, asking Herrera "to investigate the claim that an ECM download had been made from bus 4323 related to the incident" on the very day of the conference, and defendants' counsel promptly provided their supplemental response regarding the ECM data (defendant's exhibit 1 to opposition papers [NYSCEF Doc. No. 66], supplemental response regarding ECM data).

Thus, given these circumstances, the court does not find defendants' counsel's and defendants' conduct to be frivolous under 22 NYCRR 130-1.1 (c) (3).

## B. The "reasonable inquiry" under 22 NYCRR 130-1.1 (a)

22 NYCRR 130-1.1a (b) (1) states:

"By signing a paper, an attorney or party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances:

(1) the presentation of the paper or the contentions therein are not frivolous as defined in section 130-1.1(c) of this Subpart" (*id*.).

Plaintiff's counsel argues that defendants' counsel "cannot possibly have conducted a reasonable inquiry into the existence of the data as it clearly existed as per the Supervisor's Report and the testimony of SLD McCaffrey" (affirmation of plaintiff's counsel in support of motion ¶ 27).

---

[4] The court notes that, effective July 1, 2022, Rule 202.20-c (c) now provides that a discovery response contain "at the conclusion of thereof, *the affidavit* of the responding party stating: (i) whether the production of documents in its possession, custody or control and that are responsive to the individual requests is complete; or (ii) that there are no documents in its possession, custody or control that are responsive to any individual requests" (emphasis added).  Thus, an affirmation by counsel, who has no personal knowledge of the discovery response, would no longer be sufficient.

**157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**
**Motion No.  005**

Page 12 of 18

12 of 18

The court disagrees. 22 NYCRR 130-1.1a (b) (1) does not exact perfection, but rather requires a "reasonably" inquiry. The fact that ECM data existed does not itself conclusively prove that defendants' counsel failed to conduct a reasonable inquiry into its existence. Further, pursuant to 22 NYCRR 130-1.1 (c):

There is a dearth of case law on the issue of what constitutes a "reasonable inquiry" when certifying a discovery response.[5] However, Rule 11 (b) and Rule 26 (g) of the Federal Rules of Civil Procedure contain an analogous signature requirement,[6] and

---

[5] The cases which cited 22 NYCRR 130-1.1a involved cases where there was no signature at all on the papers filed with the court. This court found only one reported case which addressed the issue of counsel's "reasonable inquiry," *1334 B LLC v Pritchard* (2024 NY Slip Op 24333 [Civ Ct, Kings County 2024]). There, the court sanctioned the petitioner's counsel for having certified a holdover petition against an occupant who was an alleged licensee or squatter in rent-stabilized premises, where the publicly available rent regulatory history "would have revealed that respondent has been the registered tenant of record since 2003, was in receipt of Section 8 benefits as early as 2005, and is neither a licensee nor a squatter" (*id.*).

[6] Rule 11 (b) states:

"By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) *the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*; and

(4) *the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information*" (emphasis supplied).

Rule 11 does not apply to discovery responses (*see* Fed Rules Civ Pro rule 11[d]), but Rule 26 (g) (1) contains a similar signature requirement. Rule 26 (g) (1) states, in relevant part:

"Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed *after a reasonable inquiry*:

---

**157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**
**Motion No.  005**

Page 13 of 18

[* 13]

the federal case law interpreting the scope of a "reasonably inquiry" is much more developed. A treatise for federal practice states, in relevant part:

> "An attorney is entitled to rely on the objectively reasonable representations of the client, with the Rule requiring only that an attorney conduct 'an inquiry reasonable under the circumstances' into whether 'factual contentions have evidentiary support.' Reliance on the client may be reasonable, for example, when the evidence that will prove or disprove a contention is within the control of the adversary but an attorney must still question the client thoroughly and not accept the client's version on 'faith alone.' The attorney must determine whether the client's knowledge is 'direct or hearsay and check closely the plausibility of the client's account.'

> Before signing a pleading or other document, counsel should request all relevant documentary evidence from the client and review it carefully, since the failure to discover or recognize the significance of those documents may indicate an unreasonable factual inquiry. Likewise, if an attorney does not have to rely on the client but can get the information necessary to certify the validity of a claim from public sources, the failure to do so may make the inquiry unreasonable" (1 Civil Practice in the Southern District of New York § 5:14 [2d ed.] [footnotes omitted]).

*Savino v Computer Credit, Inc.* (164 F3d 81 [2d Cir 1981]) is instructive. There, the plaintiff sued the defendant for violations of the Fair Debt Collection Practices Act (FDCPA) (15 USC 1692 et seq). The complaint, which was signed by the plaintiff's counsel, alleged that the first letter that the plaintiff had received from defendant was on August 28, 1995, which lacked a validation notice under the FDCPA. However, the defendant claimed that it had mailed the plaintiff a prior letter dated August 14, 1995, which contained the debt validation notice required by the statue. At his deposition, the plaintiff admitted that "Any statement that [he] did not receive the August 14, 1995 letter from [defendant] would be false" (*id.* at 84).

The district court denied the defendant's motion for Rule 11 sanctions, which the Court of Appeals for the Second Circuit affirmed. The Court of Appeals reasoned, "Because Savino's counsel documented reasonable inquiry into the allegations in the complaint, the fact that Savino's deposition testimony later contradicted those allegations does not rise to the high threshold necessary for the imposition of sanctions under Rule 11" (*id.* at 88).

Here, like *Savino*, the fact that McCaffrey's deposition testimony later contradicted the earlier representations of defendants' counsel that there was no ECM

---

(A) with respect to a disclosure, *it is complete and correct as of the time it is made*" (emphasis supplied).

"In interpreting Fed. R. Civ. P. 26(g), the law developed under Rule 11 is relevant" (1 Civil Practice in the Southern District of New York § 13:12 [2d ed.]).

**157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**          **Page 14 of 18**
  **Motion No.  005**

data does not meet the high threshold for the imposition of sanctions. To the extent that plaintiff's counsel is arguing that it was unreasonable for defendants' counsel to rely on the results of Herrera's initial inquiries, the evidence is not sufficient to meet a high burden that defendant's counsel should have doubted the veracity of Herrera's information.

The only documents that could have conceivably cast doubt upon Herrera's information were the McCaffrey report and the one-page brief of the incident, which had initially led plaintiff to ask for the ECM data. The court is not persuaded that, under the circumstances, it was unreasonable for defendants' counsel not to disbelieve Herrera. The significance of those entries on the documents furnished to plaintiff's counsel is only made clear in hindsight, through McCaffrey's later deposition testimony.

For all of these reasons, the branch of plaintiff's motion for sanctions, pursuant to 22 NYCRR 130-1.1a, is denied.

## IV. Branch of Plaintiff's Motion for Such Other and Further Relief that the Court Deems Proper

### A. Whether to Compel Defendants to "Reformat" or Make "Intelligible" the ECM Data

In opposing the motion, defendants' counsel provided a supplemental response, dated November 15, 2024, continuing their objection to plaintiff's demand for ECM data, but further stating: "However, upon further investigation, defendants correct their statement as to said bus; it was equipped with ECM on July 3, 2019. A DVD with copies of Bus Download Sheets from Bus 4323 for date of accident is enclosed" (defendants' exhibit 1 [NYSCEF Doc. No. 66], defendants' supplemental response of November 15, 2024).

In reply, plaintiff complains that the ECM data provided by defendants is nothing more than "41 pages of indecipherable coded data that is impossible to read or interpret" (affirmation in reply [NYSCEF Doc. No. 71] ¶ 25). In plaintiff's reply papers, plaintiff submits responses from another litigation, *Ricky Montalvo v New York City Transit Authority*, Index No. 151199/2015 (Supreme Court, Richmond County), contending that the ECM data should have resembled what was produced in *Montalvo* (*id.* ¶ 26; *see also* exhibit C to plaintiff's reply [NYSCEF Doc. No. 74]).

In sur-reply, defendants' counsel asserts that the records submitted from the *Montalvo* action "are not copies of the data from an ECM device. Rather, these pages are from something known as a Clever Device IVN" (affirmation of defendants' counsel in sur-reply [NYSCEF Doc. No. 78] ¶ 24; *see also Montalvo* responses at 2 of 14 [the words "Clever Devices" is written at the top of the page]).

In sur-reply, defendants' counsel also submits the affidavit of Davian Cowan, the Superintendent of Accident Investigation for defendant NYCTA who is "familiar with the

**157388/2020  SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**
**Motion No.  005**

Page 15 of 18

15 of 18

location and manner in which the Clever Devices download data is stored" (defendants' exhibit 3 to sur-reply papers [NYSCEF Doc. No. 81], Cowan affidavit ¶¶ 1-4). Cowan further explains that "Clever Devices, which are installed on buses starting with the 2009 models, record accident data and can produce event reports and subsequent speed charts/acceleration charts" (*id.* ¶ 5). According to Cowan, "Accident data pages refers to reports generated from Clever Devices" and the *Montalvo* responses are examples of "accident data pages" that were downloaded from a bus with a Clever Device (*id.* ¶¶ 8, 10-11).

As Cowan further explains, the subject bus in this action was built in 2007—two years prior to 2009 when Clever Devices were regularly installed on NYCTA buses—so it was not equipped with a Clever Device, and there were thus no accident pages to download. However, Cowan further explains that "[a]ll buses, regardless of age, are equipped with Electronic Control Modules ('ECM'), the computers that run the engine" (*id.* ¶ 6). Therefore, Cowan states that pursuant to an October 18, 2024 request from defendants' counsel, he provided defendants' counsel "with a copy of the Download Check Sheet and a copy of the raw ECM data downloaded from said bus 4323 [the subject bus] from said incident, which appeared as three .xml files" (*id.* ¶ 10).

In the face of Cowan's explanation, plaintiff does not dispute that the example of ECM data which plaintiff claims ought to have been provided (*see* exhibit C to plaintiff's reply [NYSCEF Doc. No. 74) is data that comes from a Clever Device. Neither does plaintiff dispute that bus 4323 was not equipped with a Clever Device.

Nevertheless, plaintiff's counsel has repeatedly complained that the ECM data provided to him is "unintelligible" (plaintiff's second reply affirmation ¶ 17 n 1) and that it is just "gobbledygook" (oral argument tr at 36, line 2 through 37, line 3). It therefore appears that plaintiff's complaint is that the raw data which was provided to plaintiff's counsel is not usable. However, "a party cannot be compelled to create new documents or other tangible items in order to comply with particular discovery applications" (*Rosado v Mercedes-Benz of N. Am., Inc.*, 103 AD2d 395, 398 [2d Dept 1984] [party could not be compelled to provide an English translation of a document in the German language). If the raw data produced is not in usable form, defendants cannot be compelled to reformat the data into the more user-friendly format equivalent to the data retrieved from a Clever Device.[7]

## B. Whether to Grant Plaintiff Monetary Sanctions

Although not specifically requested in the notice of motion, plaintiff's counsel asserts that "[a]t great costs in both money and time, plaintiff has conducted four depositions, including non-party depositions, without the benefit of the ECM data" (reply affirmation of plaintiff's counsel ¶ 10; second reply affirmation of plaintiff's counsel ¶ 18

---

[7] However, plaintiff might be entitled to a further deposition from a witness of defendants to interpret the raw data. The court leaves it to the parties to discuss, in good faith, whether such depositions should take place and whether any other avenues of discovery should be pursued related to the ECM data.

157388/2020  SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT                    Page 16 of 18
Motion No.  005

16 of 18

[same]).  Further, in his reply affirmation, plaintiff's counsel asserts that he "spent approximately 14 hours on this motion practice and nearly 20 hours preparing for and conducting the various depositions" and that the "the reasonable hourly rate for my services is approximately $1000 per hour" (reply affirmation of plaintiff's counsel ¶ 28).

During the oral argument, the court discussed with the parties whether the appropriate remedy on this motion would be for defendants to compensate plaintiff for the cost of the depositions and his attorney fees in taking those depositions and making the instant motion (oral argument tr at 25, line 1 through 27, line 3, at 45, line 13 through 46, line 18).  Plaintiff's counsel conceded that if such costs and fees were paid by defendants, then "[y]es, this would arguably cure all of it, Judge" (*id.* at 27, line 1 through 2).  Defendants' counsel rejected such a remedy, stating that it would be improper to "reward shark practice" (*id.* at 46, line 3 through 18).

A monetary sanction, including costs and counsel fees, may be imposed under the statutory language in CPLR 3126, which permits the court to "make such orders with regard to [a] failure or refusal [to disclose information which the court finds ought to have been disclosed] as are just" (*Maxim, Inc. v Feifer*, 161 AD3d 551, 554 [1st Dept 2018] [emendation in original]).  "[I]mposition of a monetary sanction under CPLR 3126 may be appropriate to compensate counsel or a party for the time expended and costs incurred in connection with an offending party's failure to fully and timely comply with court-ordered disclosure" (*Lucas v Lawrence Stam, Susan Gordon, Martin Clearwater & Bell, LLP*, 147 AD3d 921, 926 [2d Dept 2017]).  "Sanctions under CPLR 3126, including monetary sanctions, do not depend in any measure on Rule 130 [] and, therefore are not subject to its restraints" (*Maxim, Inc.*, 161 AD3d at 554 [quotation marks omitted]).

Here, there is no dispute that defendants' counsel's statement that "said bus was not equipped with ECM on July 3, 2019" (defendant's June 22, 2022 response ¶ 1) was inaccurate, and the ECM data was not turned over until more than two years after it was initially requested.

However, plaintiff's counsel has not established that this initial failure was in violation of a court order (*see Lucas*, 147 AD3d at 926).  Further, defendants' counsel quickly turned over the ECM data after it was brought to her attention that her June 22, 2022 response might be inaccurate (*Zhang v City of New York*, 222 AD3d 445, 446 [1st Dept 2023] [reversing award of monetary sanction against the defendant City of New York where "the record does not show that the City willfully failed to comply with any discovery orders and the motion court never found as such"]).

In addition, plaintiff's counsel has not established what, if any, monetary remedy might be appropriate.  For starters, plaintiff's counsel himself states that the ECM data is simply "41 pages of indecipherable coded data that is impossible to read or interpret" (reply affirmation of plaintiff's counsel ¶ 25), so it is questionable whether he might have been able to use such ECM data at any deposition.

157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT
Motion No.  005

Page 17 of 18

17 of 18

Nonetheless, assuming plaintiff's counsel had the ECM data prior to all of the four depositions he took in this matter, plaintiff's counsel would presumably have had to spend roughly the same amount of time preparing questions and taking testimony in regard to the ECM data as he would if he takes further depositions of the same witnesses with the ECM data in hand. Plaintiff's counsel has not made any showing that the court reporter costs will be any different, given that presumably the same amount of testimony will be taken.

With regard to plaintiff's counsel's contention that he should be reimbursed for his time spent drafting and orally arguing this motion, the court rejects this position.

In the absence of a monetary sanction awarded pursuant to CPLR 3126, "[c]osts upon a motion may be awarded to any party, in the discretion of the court" (CPLR 8106), but costs may not exceed one hundred dollars (CPLR 8202). In the exercise of discretion, the court declines to award costs on the motion to plaintiff.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that the motion by plaintiff (1) for an order striking defendants' answer, pursuant CPLR 3126, "on the grounds that said defendants have willfully, and intentionally failed to provide the data from the Electronic Control Module and instead committed a fraud on the Court by affirmatively misrepresenting the existence of this discovery", (2) for costs and sanctions, pursuant to 22 NYCRR § 130-1.1, and (3) for "such other and further relief as to this Honorable Court may seem just and proper" (notice of motion [NYSCEF Doc. No. 55]) is **DENIED**; and it is further

**ORDERED** that plaintiff's counsel is directed to e-file the transcript of the virtual oral argument held on January 10, 2025, within 30 days of entry of this decision and order; and it is further

**ORDERED** that counsel for the parties are directed to appear for a status conference in this matter on **August 21, 2025** at **2:15 p.m.** in courtroom 280 at 80 Centre Street, New York, NY.

This constitutes the decision and order of the court.

20250411142510RTSAIAC4C7CE652034DAFB66EB5A097AF3AA4

__4/11/2025__
**DATE**                                                **RICHARD  TSAI, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**157388/2020   SCOTT, ZACHARY vs. NEW YORK CITY TRANSIT**                     Page 18 of 18
**Motion No.  005**